**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Laurice McCurdy, | Case No.: 2:08-cv-1767-JAD-PAL |
| Plaintiff | |
| v. | **Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment [#82]** |
| North Las Vegas Officer Johnson, | |
| Defendant | |

Pretrial detainee Laurice McCurdy claims he was beaten and tased while held at the North Las Vegas Detention Center, and he sues Officer Stuart Johnson for excessive force and deliberate indifference to his medical needs.  Johnson moves for summary judgment, arguing that the evidence does not support McCurdy's constitutional claims and that the officer enjoys qualified immunity from suit.[1]  I find this motion appropriate for resolution without oral argument[2] and that the evidence does not support McCurdy's deliberate-indifference claim against Johnson.  However, I also find that genuine issues of material fact preclude summary judgment on McCurdy's excessive-force claim and Johnson's qualified-immunity argument.  I grant Johnson's motion for summary judgment on McCurdy's deliberate-indifference claim, deny it on all other respects, and refer this case to the pro bono pilot program and to a magistrate judge for a settlement conference.

---

[1] Doc. 82.  McCurdy filed three oppositions.  Doc. 90 (filed September 13, 2013); *see also* Docs. 104, 109 (filed April 14, 2014, and July 9, 2014).  I only consider the first one, filed September 13, 2013, because it is his only timely and authorized response.

[2] *See* L.R. 78-2.  McCurdy received a timely notice under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).  Doc. 98.  I also liberally construe McCurdy's pro se filings.  *See Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003).

1

**Background**

Laurice McCurdy was housed in the Male Close Custody unit of the North Las Vegas Detention Center ("NLVDC") on April 14, 2007, when Johnson entered McCurdy's cell.[3]  McCurdy alleges that the officer began yelling at him and using racial slurs.  The parties disagree whether McCurdy's conduct called for Johnson's intervention, and whether McCurdy was combative or cooperative when Johnson entered, but they agree the officer tased McCurdy at least three times and then restrained him.  McCurdy allegedly suffered a seizure and concussion in the scuffle.  He alleges that he did not receive adequate medical care for an already-fractured forearm or any other medical attention, resulting in permanent damage to his right forearm and hand.  Johnson vehemently disputes McCurdy's account.  During the initial screening of McCurdy's claims, the court found that McCurdy stated colorable excessive-force and deliberate-indifference-to-serious-medical-needs claims against Johnson.[4]  Johnson now moves for summary judgment on both claims.

**Discussion**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[5]  When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[6]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts,"[7] he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient

---

[3] *See* Doc. 1-2 at 3–5 (discussion of facts in complaint); *see also* Doc. 82 at 2–6 (discussion of facts in summary-judgment motion).

[4] Doc. 12 at 4–5.

[5] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. Proc. 56(c)).

[6] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[7] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

1  evidentiary basis on which a reasonable fact finder could find in his favor.[8]  If reasonable minds

2  could differ on the material facts at issue, summary judgment is not appropriate because the purpose

3  of summary judgment is to avoid unnecessary trials when the facts are undisputed.[9]  A party seeking

4  to either support or refute the assertion that a fact is genuinely in dispute must do so with admissible

5  evidence.[10]

6

7  **A.    Genuine Issues of Material Fact Preclude Summary Judgment on McCurdy's Excessive-Force Claim.**

8           Johnson first argues that he is entitled to summary judgment on McCurdy's excessive-force

9  claim because the force used was a reasonable, good-faith response to McCurdy's own disruptive

10  behavior.[11]  When detention-facility guards are accused of excessive physical force, the "core judicial

11  inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or

12  maliciously and sadistically to cause harm."[12]  Courts consider whether force was necessary, the

13  relationship between a need and the level of force used, what threat responsible officials would

14  reasonably perceive, and "any efforts made to temper the severity of a forceful response."[13]

15           McCurdy describes his version of the events in a declaration signed under penalty of perjury

16

17  _____

18       [8] *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

19       [9] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

20

21       [10] Fed. R. Civ. Proc. 56(c)(1); Fed. R. Evid. 901; *Orr*, 285 F.3d at 773.

22       [11] Doc. 82 at 10.  Pretrial detainees' rights fall under Fourteenth Amendment due process, and prisoners' rights are considered under the Eight Amendment, but courts apply the same constitutional analysis to both.  *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Bell v.*

23  *Wolfish,* 441 U.S. 520, 535 n. 16 (1979); *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991), *abrogated on other grounds*, 511 U.S. 825 (1994)).

24

25       [12] *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional

26  rights."  *Id.* at 9 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)) (internal quotation marks omitted).

27       [13] *Id.* at 7.

28                                          3

and that complies with 28 U.S.C. § 1746.[14]  He explains that he was "attempting to explain" something to a jail technician, but she walked away while he was speaking.[15]  When he tried to get her attention again, Officer Johnson intervened, directed McCurdy to be silent, and "became increasingly agitated and exclaimed in a loud voice for the entire range to hear, words to the best of [his] recollection, 'That's it, sit your ass on the bunk, I'm done f*cking around with you.'"[16]  McCurdy claims he complied and began eating his dinner, but Johnson unexpectedly returned in "a full blown rage" and tried to goad McCurdy into a fight.[17]  McCurdy declares that Johnson called him "some derogatory names and wagged his finger in McCurdy's face and said that "they didn't put up with any tough guy n***** bullsh*t at the jail."[18]  McCurdy claims he raised his arms in "a gesture of surrender" and said again that he wanted no problems.[19]  And though he begged Johnson not to restrain him because he suffers from seizures, Johnson replied, "too bad" and tried to grab Johnson's broken arm.  Johnson then "curled up in a ball" on the bed, and "the next thing [he] knew, Johnson tased [him] in the back of the head" and then began kicking and punching him in the back, sides, and heads, followed by "two or three" more tasings.[20]

Johnson tells a very different story.  He recounts[21] that McCurdy asked for the jail technician

---

[14] Doc. 90 at 21–24.

[15] Doc. 90 at ¶ 5.

[16] *Id.* at ¶¶ 7–8.

[17] *Id.* at ¶ 8.

[18] *Id.* at ¶ 9.

[19] *Id.*

[20] *Id.* at ¶¶ 10–12.

[21] These facts are contained in Johnson's incident report.  82-1 at 27–29.  This report is admissible because it is attached to Johnson's verified interrogatory responses (#2) in which he affirms that this account "provides [his] description of the incident."  Doc. 82-1 at 19.  I exercise my discretion to consider this as Johnson's verified account of the events.

1   to return by shouting, "Tell that classification b\*tch that told me to chill I want to talk to her."[22]

2   Johnson states it was McCurdy who was growing increasingly agitated, stood in defiance with his

3   hands clenched, and yelled, "f\*ck you, what are you gonna do?"[23]  As another officer went for the

4   restraining chair, which Johnson had warned McCurdy might be necessary, McCurdy continued to

5   disregard Johnson's orders.[24]  As Johnson reached to grasp McCurdy's left arm and restrain him, the

6   detainee "looked like he was going to throw a punch at [Johnson],[25] and Johnson then tased the base

7   of McCurdy's neck on the right side.[26]  In the struggle that followed, a swing from McCurdy's left

8   hand struck the left side of Johnson's face and cut the officer's lip.[27]  Johnson tased McCurdy as they

9   kept grappling on McCurdy's neck and upper back, and was able to handcuff McCurdy after the third

10   time.[28]  Johnson reports that McCurdy was placed in the restraint chair and taken to the booking area

11   "where he could be medically cleared for possible injuries."[29]

12       These divergent accounts leave me with genuine and material issues of fact about the

13   reasonableness of Johnson's conduct that prevent me from granting Johnson's motion for summary

14   on this claim.  The "core judicial inquiry" in an excessive-force case is whether the official acted in

15   good faith to maintain or restore discipline or in a malicious and sadistic manner designed to cause

16   harm.[30]  If a jury were to believe McCurdy's account, it could reasonably conclude that force was not

17   needed, the relationship between the need and the level of force applied was disproportionate, that

18

---

19       [22] Doc. 82-1 at 28; *see also id.* at 1 (authenticating exhibits).

20       [23] *Id.* at 28.

21       [24] *Id.* at 29.

22       [25] *Id.*

23       [26] *Id.*

24       [27] *Id.*

25       [28] *Id.*

26       [29] *Id.*

27       [30] *Hudson*, 503 U.S. at 6–7.

28

1    Johnson did not reasonably perceive a threat requiring him to enter the cell with force, and that he

2    was creating rather than tempering a forceful response.  Accordingly, I deny summary judgment on

3    McCurdy's excessive-force claim.

4    **B.      Summary Judgment is Appropriate on McCurdy's Deliberate-Indifference Claim.**

5           The same cannot be said, however, about McCurdy's claim that Johnson acted with

6    deliberate indifference to his serious medical needs.  To prevail on a deliberate-indifference claim,

7    McCurdy must demonstrate that Johnson knew of and disregarded "an excessive risk to [his]

8    health"; Johnson must have been "both [] aware of facts from which the inference could be drawn

9    that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference."[31]

10   Deliberate indifference cannot be established by mere negligence;[32] the official must have acted

11   wantonly, an analysis that "turns not upon its effect on the prisoner, but rather, upon the constraints

12   facing the official."[33]

13          The record does not support McCurdy's theory that Johnson acted with a constitutionally

14   actionable deliberate indifference to his serious medical needs.  Even if, as McCurdy declares, he

15   told Johnson that he "couldn't fight because [his] arm was broken" and that he suffered from

16   seizures "and was afraid that [he] would seriously injury [himself] if [he were to suffer] a seizure

17   while strapped" in the restraint chair, the record establishes, at best, that Johnson proceeded

18   negligently with respect to these medical needs.  McCurdy himself declares that he was promptly

19   "placed in a restraint chair and wheeled to booking" and conveniently claims he has no memory of

20   whether he was examined by medical staff.[34]  Johnson was not part of the medical staff, and he states

21   in his verified interrogatory responses that he has no knowledge of McCurdy's post-restraint medical

22   treatment because Johnson himself "was injured in the incident and taken to a different area of the

_____

24          [31] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

25          [32] *Frost*, 152 F.3d at 1128.

26          [33] *Id.*

27          [34] Doc. 90 at 23, ¶ 13.

28                                          6

jail than" McCurdy.[35]  Indeed, McCurdy fails to raise any deliberate indifference arguments in his response to Johnson's motion for summary judgment.  As McCurdy has not identified genuine issues of material fact that demonstrate that Johnson himself acted with deliberate indifference to his medical needs, summary judgment on this claim is now warranted.[36]

**C.      McCurdy Has Pled No Claim Against Johnson in his Official Capacity.**

Johnson also asks the court to enter summary judgment in his favor on all claims brought against him in his official capacity.[37]  He argues that official-capacity claims require proof that the officer was acting pursuant to an official plan or policy—a component missing from this record.[38]  There is a fundamental problem with Johnson's argument: McCurdy has alleged no official-capacity claim.

As McCurdy accurately argues, in the 42 U.S.C. § 1915A screening order in this case the court "held that the complaint failed to state an official capacity claim invoking municipal liability" and that, "[i]nstead, the screening order found that the complaint stated a claim against the defendant in his individual capacity only."[39]  Johnson himself has taken the position that he is being sued individually.  When responding to McCurdy's written discovery request for municipal records, Johnson's counsel wrote:

---

[35] Doc. 82-1 at 23.

[36] McCurdy's request for additional time for discovery under FRCP 56(d) does not persuade me to delay or deny summary judgment on this claim.  *See* Doc. 90 at 14–15.  First, McCurdy has not complied with Rule 56(d)'s prerequisite that he must show "by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition."  McCurdy's declaration says nothing about a need for additional discovery.  *See* Doc. 90 at 21–24.  Second, in his brief, McCurdy explains that the additional discovery he seeks is to show "that Johnson exceeded the scope of his employment and violated the policies and procedures of the NLVDC."  Doc. 90 at 15.  But because McCurdy sues Johnson in his individual capacity, he does not need to prove that Johnson violated an official custom or policy.  The discovery that he seeks is, therefore, not necessary, as a matter of law, to prove his claim.

[37] Doc. 82 at 16.

[38] Doc. 82 at 16–17.

[39] Doc. 90 at 16.

7

1
2
3
4

> The undersigned represents only Defendant Johnson in this litigation.  It is not the undersigned's role in this litigation to conduct the discovery for Plaintiff, simply because he is appearing in proper person . . . .  The policies and procedures Plaintiff has requested likely involve sensitive, confidential and/or proprietary materials which are only produced by counsel representing the City of North Las Vegas, and/or the appropriate related entity.[40]

5  This response suggests that Johnson recognized he is being sued in his individual capacity, not as a

6  representative of the municipality.  This characterization is also consistent with Magistrate Judge

7  Leen's order adjudicating a discovery dispute, in which she explained:

8
9
10
11

> Although Plaintiff's Complaint attempted to sue Defendant in his official capacity, the court did not find Plaintiff had stated an official capacity claim against Defendant.  The Screening Order found Plaintiff had stated a claim against Defendant only in his individual capacity.  Therefore, Plaintiff's argument that this lawsuit is essentially a suit against the City of North Las Vegas is without merit.  Defendant cannot be compelled to produce documents from an agency that previously employed him when the records are not in his possession, custody, or control.[41]

12  Because McCurdy sues Johnson in his individual capacity only, Johnson's argument that any of

13  McCurdy's claims fail under *Monell v. Department of Social Services*[42] is simply misplaced.

14  Johnson's request for summary judgment on any official-capacity claim is denied as moot.

15  **D.      Johnson Has Not Established His Entitlement to Qualified Immunity.**

16      Finally, I consider Johnson's argument that he is entitled to qualified immunity from

17  McCurdy's remaining excessive-force claim.[43]  "Because qualified immunity is an immunity from

18  suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to

19  go to trial."[44]  In *Saucier v. Katz*, the Supreme Court held that courts must (1) first determine whether

20  the plaintiff alleges facts that make out a constitutional violation and, if so, (2) decide whether the

21

22

23  ───────────────

[40] Doc. 76 at 4.

[41] Doc. 84 at 5.

[42] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[43] Doc. 82 at 13–16.

[44] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (internal quotation marks omitted).

24
25
26
27
28

right was "clearly established" when the defendant allegedly violated it.[45]  Eight years later, the Supreme Court retreated slightly from its position in *Saucier* and held in *Pearson v. Callahan* that courts can decide these questions in the order they choose.[46]  As the Supreme Court affirmed in *Pearson*, qualified immunity applies "unless the official's conduct violated a clearly established constitutional right."[47]  And, as Johnson reminds me, "[t]he dispositive question is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[48]

The factual issues described *supra* prevent me from granting summary judgment in Johnson's favor under a qualified-immunity theory.  Johnson does not allege that the law on excessive force was not sufficiently established but rather that the facts do not show a constitutional violation occurred.[49]  But McCurdy's declaration states facts that, if believed, could support an excessive-force violation.  *See supra*.  If McCurdy's account is accurate, a jury could conclude that a reasonable officer would have known that Johnson's conduct was unlawful in this situation.  I therefore find that, despite the policies that support immunity when officials violate a detainee's constitutional rights in good faith and in the absence of clearly established law, the facts described in McCurdy's declaration prevent Johnson from establishing his good-faith entitlement to qualified immunity on summary judgment.  Accordingly, I deny Johnson's request for summary judgment based on qualified immunity on McCurdy's remaining excessive-force claim.

---

[45] *Id.* at 232 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (internal quotation marks omitted).

[46] *Id.* at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

[47] *Id.* at 232 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[48] Doc. 82 at 15 (quoting *Saucier*, 533 U.S. at 202).

[49] *See, e.g.*, *id.* at 7–13.

**Conclusion**

Accordingly, for the foregoing reasons, it is hereby ORDERED, ADJUDGED, and DECREED that Johnson's motion for summary judgment **[Doc. 82] is GRANTED IN PART AND DENIED IN PART: it is granted as to McCurdy's deliberate-indifference-to-serious-medical-needs claim and denied in all other respects.**

IT IS FURTHER ORDERED that this case is **referred to the Pilot Pro Bono Program** adopted in General Order 2014-01 to screen for financial eligibility (if necessary) and identify counsel willing to be appointed as pro bono counsel for plaintiff Laurice McCurdy.  The scope of appointment shall be for all purposes through the conclusion of trial.  By referring this case to the Program, I am not expressing an opinion as to the merits of the case.

IT IS FURTHER ORDERED that the **Clerk of Court shall forward this order to the Pro Bono Liaison**.

The parties are further **ORDERED to a settlement conference** before a magistrate judge.

DATED February 17, 2015.

_____
Jennifer A. Dorsey
United States District Judge

10